(No. 4425- ▮▮▮▮▮▮▮▮)

ARTHUR L. JENKINS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 11, 1952.*

SCHMIEDESKAMP AND JENKINS, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; CHARLES H. EVANS, Assistant Attorney General, for Respondent.

DELANEY, J.

Arthur L. Jenkins, claimant, filed his complaint herein on April 16, 1951, alleging that on December 19, 1949 he was employed by the Department of Revenue, Division of Petroleum and Oils. Claimant was traveling

from his home to the laboratory in Peoria, Illinois with samples of gasoline in an automobile owned by the respondent, State of Illinois. He passed a number of cars; and, as he pulled back into the proper lane of traffic, a defective steering gear caused the automobile to veer to the left and strike another car. Claimant was removed from the scene of the accident in an ambulance, and taken to the hospital.

Claimant was treated by Dr. James Merritt at respondent's request. The report of Dr. Merritt, dated December 21, 1951, stated:

"The movements of the right shoulder were entirely normal. The right elbow showed limitation of extension some 10 degrees and limitation of flexion some 8 degrees. Pronation and supination of the right forearm were normal.

The movements of the right wrist were entirely normal.

The movements of the right thumb were entirely normal.

In viewing the dorsal aspect of the right hand, it is to be noted a small abnormal bony prominence over the head of the second metacarpal. This was the site of the previously markedly displaced comminuted fracture.

The movements of the right index finger at the metacarpal phalangeal joint reveals complete extension. Flexion of the metacarpal phalangeal joint of the right index finger is 120 degrees. Flexion of the proximal interphalangeal joint of the right index finger is 85 degrees. Extension of the proximal interphalangeal joint of the right index finger is limited 41 degrees.

Examination of the distal interphalangeal joint of the right index finger reveals complete extension is present, but it flexes only 25 degrees from the position of complete extension.

The metacarpal phalangeal joint shows complete extension and flexion 86 degrees from position of complete extension. Extension of the proximal interphalangeal joint is limited 20 degrees. Flexion of the proximal interphalangeal joint is entirely normal. Flexion of the distal interphalangeal joint of the ring finger is only 62 degrees. Extension of the distal phalangeal joint is entirely normal.

All the movements of the right little finger are entirely normal.

There is no sign of atrophy of the right arm, forearm and hand. Exception---- There is now evidence of atrophy of the interrosseous muscles of the right hand.

It is my opinion that the atrophy of the interrosseous muscles of the right hand, which is present at this time, and, which was not in evidence at the time of my previous examination of him on October 30, 1950, constitutes no further disability, and came about from not using the fingers, which he already could not use when I previously examined him."

The record consists of the complaint, motion of respondent to dismiss, notice to call up the motion to

dismiss, memoranda of claimant in opposition to the motion of respondent to dismiss, Departmental Report, transcript of evidence and Supplemental Departmental Report.

No jurisdictional question was raised. The claimant and respondent were operating under the Workmen's Compensation Act, and the accident arose out of and in the course of his employment.

From the medical report of Dr. Merritt, and the examination of Commissioner Summers of this Court, we are of the opinion that the claimant has suffered a 40% permanent loss of use of his right hand.

On the date of the accident, claimant was 53 years of age, and did not have any children under 18 years of age. Claimant started to work for respondent in June of 1949, and received $286.50 per month, which indicates that he receives more than $1,560.00 per year. He was injured on December 19, 1949, and was released by his doctor and returned to work on April 19, 1950. Claimant received full pay during this time, a period of 17 1/7 weeks. Although Mr. Jenkins received $1,227.77 for the period he was unable to work, the Department of Revenue should have paid claimant his compensation rate of $22.50 per week, or the sum of $385.71, which means that claimant was overpaid the sum of $842.06, which must be deducted from his award.

Claimant is entitled to an award under Section 8, Paragraph (e) (12) of the Workmen's Compensation Act for 68 weeks, or the sum of $1,530.00, from which must be deducted the sum of $842.06, or a total award of $687.94.

Claimant's weekly compensation rate would be the maximum of $15.00. Since the accident occurred sub-

sequent to July 1, 1949, this must be increased 50%, making the compensation $22.50 per week.

An award is, therefore, made to claimant, Arthur L. Jenkins, in the sum of $687.94, all of which has accrued, and is payable forthwith.

Helen Woolley was employed to take and transcribe the evidence at the hearing before Commissioner Summers, and has submitted a statement therefor in the amount of $40.75, which charges are fair, reasonable and customary. An award is, therefore, entered in favor of Helen Woolley, in the amount of $40.75, payable forthwith.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees".